Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MURRAY *v.* UBS SECURITIES, LLC, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 22–660.   Argued October 10, 2023—Decided February 8, 2024

Congress enacted the whistleblower protections of the Sarbanes-Oxley Act of 2002 to prohibit publicly traded companies from retaliating against employees who report what they reasonably believe to be instances of criminal fraud or securities law violations. Title 18 U. S. C. §1514A(a) specifically provides that employers may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of" protected whistleblowing activity. In this case, Trevor Murray filed a whistleblower action in District Court alleging that UBS terminated his employment in violation of §1514A. Murray had worked for UBS as a research strategist in a role that required him to certify—in accordance with applicable Securities and Exchange Commission regulations—that his reports to UBS customers on the firm's securities business were independently produced and reflected his own views. UBS terminated Murray shortly after he informed his supervisor that two leaders of the UBS trading desk were engaging in what he believed to be unethical and illegal efforts to skew his independent reporting.

In the District Court, UBS argued it was entitled to judgment as a matter of law on Murray's whistleblower claim because Murray "failed to produce any evidence that [his supervisor] possessed any sort of retaliatory animus toward him." The District Court denied the motion. As relevant here, it instructed the jury that, to prove his §1514A claim, Murray must establish by a preponderance of the evidence that his "protected activity was a contributing factor in the termination of his employment." App. 126–127. If Murray did so, the burden would shift to UBS to "demonstrate by clear and convincing evidence that it would have terminated [Murray's] employment even if he had not engaged in

Syllabus

protected activity." *Id.,* at 130. The jury found that Murray had established his §1514A claim and UBS had failed to prove that it would have fired Murray even if he had not engaged in protected activity. On appeal, the Second Circuit vacated the jury's verdict and remanded for a new trial. The Second Circuit held that "[r]etaliatory intent is an element of a section 1514A claim," and the trial court erred by not instructing the jury on Murray's burden to prove UBS's retaliatory intent. 43 F. 4th 254, 258, 262–263.

*Held*: A whistleblower who invokes §1514A must prove that his protected activity was a contributing factor in the employer's unfavorable personnel action, but need not prove that his employer acted with "retaliatory intent." Pp. 7–15.

(a) Section 1514A(a)'s text does not reference or include a "retaliatory intent" requirement, and the provision's mandatory burden-shifting framework cannot be squared with one. In explaining why, and consistent with the Second Circuit's opinion, the Court treats "retaliatory intent" as meaning something akin to animus.

Although the Second Circuit and UBS both rely on the word "discriminate" in §1514A(a) to impose a "retaliatory intent" requirement on whistleblower plaintiffs, the word "discriminate" cannot bear that weight. First, placement of the word "discriminate" in the section's catchall provision suggests that it is meant to capture other adverse employment actions that are not specifically listed, drawing meaning from the terms "discharge, demote, suspend, threaten, [and] harass" rather than imbuing those terms with a new or different meaning. But even accepting UBS's argument that "discriminate" relates back to and characterizes "discharge," the word "discriminate" simply does not require retaliatory intent. The "normal definition" of "discrimination" is "differential treatment." *Babb* v. *Wilkie*, 589 U. S. 399, 405. When an employer treats a whistleblower differently, and worse, "because of" his protected whistleblowing activity, that is actionable discrimination, and the employer's lack of "animosity" is "irrelevant." *Bostock* v. *Clayton County*, 590 U. S. 644, 658, 663. Pp. 7–10.

(b) In addition to having no basis in the statutory text, requiring a whistleblower to prove his employer's retaliatory intent would ignore the statute's mandatory burden-shifting framework. Burden-shifting frameworks have long provided a key mechanism for getting at "the elusive factual question" of intent in employment discrimination cases. *Watson* v. *Fort Worth Bank & Trust*, 487 U. S. 977, 986 (quoting *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 255, n. 8). Burden shifting "forc[es]" the defendant to come forward with some response" to the employee's circumstantial evidence. *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 510–511. Congress decided in Sarbanes-Oxley that the plaintiff's burden on intent is only to show that

Syllabus

the protected activity was a "contributing factor in the unfavorable personnel action." 49 U. S. C. §42121(b)(2)(B)(i). If the plaintiff makes that showing, the burden shifts to the employer to "demonstrat[e], by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior." §42121(b)(2)(B)(ii). The contributing-factor burden-shifting framework is meant to be plaintiff-friendly. Here, the Second Circuit erred by making proof of "retaliatory intent" a requirement for satisfaction of the "contributing factor" element. 43 F. 4th, at 259–260. Showing that an employer acted with retaliatory animus is one way of proving that the protected activity was a contributing factor in the adverse employment action, but it is not the only way. Pp. 10–13.

(c) UBS and its *amici* argue that, without a retaliatory intent requirement, innocent employers will face liability for legitimate, nonretaliatory personnel decisions. But the statute's burden-shifting framework does not lead to that result. Section 42121(b)(2)(B)(ii)'s same-action causation inquiry asks whether the employer would have taken the same action against an otherwise identical employee who had not engaged in protected activity. While the contributing-factor framework that Congress chose in Sarbanes-Oxley is not as protective of employers as a motivating-factor framework, that is by design. This Court cannot override Congress' policy choice by giving employers more protection than the statute provides. Pp. 13–14.

43 F. 4th 254, reversed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court. ALITO, J., filed a concurring opinion, in which BARRETT, J., joined.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–660
_____

## TREVOR MURRAY, PETITIONER *v.* UBS SECURITIES, LLC, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[February 8, 2024]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Under the whistleblower-protection provision of the Sarbanes-Oxley Act of 2002, no covered employer may "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of" protected whistleblowing activity. 18 U. S. C. §1514A(a). When a whistleblower invokes this provision, he bears the initial burden of showing that his protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U. S. C. §42121(b)(2)(B)(iii). The burden then shifts to the employer to show that it "would have taken the same unfavorable personnel action in the absence of" the protected activity. §42121(b)(2)(B)(iv).

The question before this Court is whether the phrase "discriminate against an employee . . . because of" in §1514A(a) requires a whistleblower additionally to prove that his employer acted with "retaliatory intent." Below, the Court of Appeals for the Second Circuit endorsed such a requirement. This Court disagrees.

Opinion of the Court

## I

Congress enacted the Sarbanes-Oxley Act in the wake of the Enron scandal to "'prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions.'" *Lawson* v. *FMR LLC*, 571 U. S. 429, 434 (2014) (quoting S. Rep. No. 107–146, p. 2 (2002) (hereinafter S. Rep.)). "Of particular concern to Congress was abundant evidence that Enron had succeeded in perpetuating its massive shareholder fraud in large part due to a 'corporate code of silence'" that "'discourage[d] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally.'" 571 U. S., at 435 (quoting S. Rep., at 4–5; alteration in original). Indeed, employees of Enron who had attempted to report corporate misconduct internally were often fired.

Congress' response was 18 U. S. C. §1514A, which prohibits publicly traded companies from retaliating against employees who report what they reasonably believe to be instances of criminal fraud or securities law violations. The provision establishes that no employer may "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of" the employee's protected whistleblowing activity. §1514A(a). If an employer violates this provision, the employee can file a complaint with the Department of Labor seeking reinstatement, back pay, compensation, and other relief. §§1514A(b)(1)(A), (c). If there is no final decision from the Secretary of Labor within 180 days, the employee can file suit in federal court seeking the same relief. §§1514A(b)(1)(B), (c).

If the whistleblower does bring an action in federal court, Sarbanes-Oxley directs the court to apply the "legal burdens of proof set forth in section 42121(b) of title 49, United States Code"—a provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21).

Opinion of the Court

§1514A(b)(2)(C). This incorporated burden-shifting framework provides that the whistleblower bears the burden to prove that his protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U. S. C. §42121(b)(2)(B)(i). If the whistleblower makes that showing, the burden shifts to the employer to show "by clear and convincing evidence" that it "would have taken the same unfavorable personnel action in the absence of" the protected activity. §42121(b)(2)(B)(ii).

This framework is not unique to Sarbanes-Oxley and AIR 21. It originated in the Whistleblower Protection Act of 1989 (WPA), 5 U. S. C. §1221(e), which provides legal protection for whistleblowers within the civil service. The framework was meant to relieve whistleblowing employees of the "excessively heavy burden" under then-existing law of showing that their protected activity was a "'significant', 'motivating', 'substantial', or 'predominant'" factor in the adverse personnel action, and it reflected a determination that "[w]histleblowing should never be a factor that contributes in any way to an adverse personnel action." 135 Cong. Rec. 5032, 5033 (1989) (Explanatory Statement on S. 20, 101st Cong., 1st Sess. (1989)). Congress then incorporated the easier-to-satisfy "contributing factor" framework into a series of similar whistleblower statutes that protect non-civil-service employees in industries where whistleblowing plays an especially important role in protecting the public welfare—including, as noted above, the airline industry (AIR 21) and the securities industry (Sarbanes-Oxley).[1]

---

[1] See also, *e.g.*, Motor Vehicle and Highway Safety Improvement Act of 2012, §31307(b), 126 Stat. 766–769 (enacting 49 U. S. C. §30171(b)); FDA Food Safety Modernization Act, §402, 124 Stat. 3968–3971 (amending the Federal Food, Drug, and Cosmetic Act, 21 U. S. C. §301 *et seq.*, by adding 21 U. S. C. §399d(b)); Consumer Product Safety Improvement Act of 2008, §219(a), 122 Stat. 3063–3065 (enacting 15 U. S. C. §2087(b)); Energy Policy Act of 1992, §2902(d), 106 Stat. 3123–3124 (amending Energy Reorganization Act of 1974, 42 U. S. C. §5801 *et seq.*, by adding §5851(b)(3)).

Opinion of the Court

## II

In 2011, petitioner Trevor Murray was employed as a research strategist at securities firm UBS, within the firm's commercial mortgage-backed securities (CMBS) business. In that role, Murray was responsible for reporting on CMBS markets to current and future UBS customers. Securities and Exchange Commission (SEC) regulations required him to certify that his reports were produced independently and accurately reflected his own views. See 17 CFR §242.501(a) (2022). Murray contends that, despite this requirement of independence, two leaders of the CMBS trading desk improperly pressured him to skew his reports to be more supportive of their business strategies, even instructing Murray to "clear [his] research articles with the desk" before publishing them. 1 App. in No. 20–4202 (CA2), p. 254.

Murray reported that conduct to his direct supervisor, Michael Schumacher, in December 2011 and again in January 2012, asserting that it was "unethical" and "illegal." App. 28. Schumacher expressed sympathy for Murray's situation but emphasized that it was "very important" that Murray not "alienate [his] internal client" (*i.e.*, the trading desk). *Ibid.* When Murray later informed Schumacher that the situation with the trading desk "was bad and getting worse," as he was being left out of meetings and subjected to "constant efforts to skew [his] research," Schumacher told him that he should just "write what the business line wanted." *Id.*, at 29–30. Shortly after that exchange (and despite having given Murray a very strong performance review just a couple months earlier) Schumacher emailed his own supervisor and recommended that Murray "be removed from [UBS's] head count." *Id.*, at 39. Schumacher recommended in the alternative that, if the CMBS trading desk wanted him, Murray could be transferred to a desk analyst position, where he would not have SEC certification responsibilities. The trading desk declined to accept Murray as a transfer, and UBS fired him in February 2012.

Opinion of the Court

Murray then filed a complaint with the Department of Labor alleging that his termination violated §1514A of Sarbanes-Oxley because he was fired in response to his internal reporting about fraud on shareholders. When the agency did not issue a final decision on his complaint within 180 days, Murray filed an action in federal court.

Murray's claim went to trial. UBS moved for judgment as a matter of law, arguing, among other things, that Murray had "failed to produce any evidence that Schumacher possessed any sort of retaliatory animus toward him." No. 1:14–cv–00927 (SDNY, Dec. 14, 2017), ECF Doc. 244, p. 6. The District Court denied the motion.

The District Court instructed the jury that, in order to prove his §1514A claim, Murray needed to establish four elements: (1) that he engaged in whistleblowing activity protected by Sarbanes-Oxley, (2) that UBS knew that he engaged in the protected activity, (3) that he suffered an adverse employment action (*i.e.*, was fired), and (4) that his "protected activity was a contributing factor in the termination of his employment." App. 126–127. On the last element, the District Court further instructed the jury: "For a protected activity to be a contributing factor, it must have either alone or in combination with other factors tended to affect in any way UBS's decision to terminate [his] employment." *Id.*, at 130. The court explained that Murray was "not required to prove that his protected activity was the primary motivating factor in his termination, or that . . . UBS's articulated reason for his termination was a pretext." *Ibid.* If Murray proved each of the four elements by a preponderance of the evidence, the District Court instructed, the burden would shift to UBS to "demonstrate by clear and convincing evidence that it would have terminated [Murray's] employment even if he had not engaged in protected activity." *Ibid.*

During deliberations, the jury asked for clarification of the contributing-factor instruction. The court responded

that the jury "should consider" whether "anyone with th[e] knowledge of [Murray's] protected activity, because of the protected activity, affect[ed] in any way the decision to terminate [Murray's] employment." *Id.*, at 180. When the court previewed this response to the parties, UBS indicated that it "would be comfortable" with that formulation. *Id.*, at 140.

The jury found that Murray had established his §1514A claim and that UBS had failed to prove, by clear and convincing evidence, that it would have fired Murray even if he had not engaged in protected activity. (In that regard, UBS had argued to the jury that market-wide difficulties and a $2-billion loss on a UBS trading desk in London had required the elimination of certain positions, including Murray's.) The jury also issued an advisory verdict on damages, recommending that Murray receive nearly $1 million.

After the trial, UBS again moved for judgment as a matter of law, which the court denied. The court then adopted the jury's advisory verdict on damages and awarded an additional $1.769 million in attorney's fees and costs. UBS appealed the decision, and Murray cross-appealed on the issues of back pay, reinstatement, and attorney's fees.

The Second Circuit panel vacated the jury's verdict and remanded for a new trial. The court identified the central question as "whether the Sarbanes-Oxley Act's antiretaliation provision requires a whistleblower-employee to prove retaliatory intent," and, contrary to the trial court, it concluded that the answer was yes. 43 F. 4th 254, 258 (2022). The court acknowledged that the jury instructions correctly identified the four elements of a §1514A claim, consistent with Circuit precedent. The court concluded, however, that the further instruction on the contributing-factor element was wrong as a matter of law.

Looking to the text of §1514A and focusing in on the phrase "discriminate . . . because of," the court nevertheless held that "to prevail on the 'contributing factor' element of

Opinion of the Court

a [§1514A] antiretaliation claim, a whistleblower-employee must prove that the employer took the adverse employment action against the whistleblower-employee with retaliatory intent." *Id.*, at 259–260. The court noted that this holding was consistent with its recent "interpretation of nearly identical language in the Federal Railroad Safety Act." *Id.*, at 260 (discussing *Tompkins* v. *Metro-North Commuter R. Co.*, 983 F. 3d 74 (CA2 2020)). The court further determined that "the district court's failure to instruct the jury on Murray's burden to prove UBS's retaliatory intent" was not harmless—despite "circumstantial evidence at trial that UBS terminated Murray in retaliation for whistleblowing," such as the close temporal proximity between Murray's whistleblowing and termination and the fact that Schumacher had given Murray a good performance evaluation prior to his whistleblowing. 43 F. 4th, at 262. The court concluded that "[r]etaliatory intent is an element of a section 1514A claim," and "[t]he district court erred by failing to instruct the jury on Murray's burden to prove UBS's retaliatory intent." *Id.*, at 262–263.

The Second Circuit's opinion requiring whistleblowers to prove retaliatory intent placed that Circuit in direct conflict with the Fifth and Ninth Circuits, which had rejected any such requirement for §1514A claims. Compare *id.*, at 262, with *Halliburton, Inc.* v. *Administrative Review Bd.*, 771 F. 3d 254, 263 (CA5 2014) (*per curiam*) (holding that retaliatory intent is not an element of a §1514A claim); *Coppinger-Martin* v. *Solis*, 627 F. 3d 745, 750 (CA9 2010) (same). This Court granted certiorari to resolve this disagreement. 598 U. S. ___ (2023).

III

Section 1514A's text does not reference or include a "retaliatory intent" requirement, and the provision's mandatory burden-shifting framework cannot be squared with such a requirement. While a whistleblower bringing a

§1514A claim must prove that his protected activity was a contributing factor in the unfavorable personnel action, he need not also prove that his employer acted with "retaliatory intent."

Before explaining why a §1514A claim does not require proof of "retaliatory intent," it is necessary to understand what that term means. The Second Circuit seemed to conceive of "retaliatory intent" as "prejudice" or "animus." 43 F. 4th, at 259, 261. UBS insists that it means something else, arguing that "[t]he Second Circuit mentioned 'animus' only twice" and that the Circuit explicitly required "a showing of 'retaliatory intent,' not hostile feelings toward the employee." Brief for Respondents 27, n. 3. UBS's circular definition does not reveal anything about what "retaliatory intent" means, however, and UBS itself equated retaliatory intent with "animus" in its briefing below. See *supra*, at 5. Thus, consistent with the Second Circuit's opinion, this Court treats "retaliatory intent" as something akin to animus. See also Brief for United States as *Amicus Curiae* 16 (suggesting that an employer acts with "retaliatory intent" "where the employer act[s] out of prejudice, animus, or comparable hostile or culpable intent").

A

The Second Circuit and UBS both rely heavily on the word "discriminate" in §1514A to impose a "retaliatory intent" requirement on whistleblower plaintiffs. As UBS acknowledges, the Second Circuit's holding was "expressly predicated" on the word "discriminate." Brief in Opposition 11. That word, however, cannot bear the weight that both the Second Circuit and UBS place on it.

Consider the statutory text: No employer subject to Sarbanes-Oxley "may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of" the employee's protected whistleblowing

activity. §1514A(a). To start, the placement of the word
"discriminate" in the section's catchall provision suggests
that it is meant to capture other adverse employment ac-
tions that are not specifically listed, drawing meaning from
the terms "discharge, demote, suspend, threaten, [and] har-
ass" rather than imbuing those terms with a new or differ-
ent meaning. See, *e.g.*, *Brogan* v. *United States*, 522 U. S.
398, 403, n. 2 (1998) ("[W]hen a general term follows a spe-
cific one, the general term should be understood as a refer-
ence to subjects akin to the one with specific enumeration").
Here, there is no dispute that Murray was "discharge[d],"
and so it is not obvious that the "or in any other manner
discriminate" clause has any relevance to his claim. Ac-
cording to UBS, though, "discriminate" in the catchall pro-
vision relates back to and characterizes "discharge," such
that "to be actionable, discharge must be a 'manner' of dis-
criminating." Brief for Respondents 11. Accepting this
statutory construction argument "for argument's sake," as
this Court did in *Bostock* v. *Clayton County*, 590 U. S. 644,
657 (2020), the question is whether the word "discriminate"
inherently requires retaliatory intent. It does not.

In *Babb* v. *Wilkie*, 589 U. S. 399 (2020), this Court ex-
plained that the "normal definition" of "discrimination" is
"differential treatment." *Id.*, at 405 (quoting *Jackson* v. *Bir-
mingham Bd. of Ed.*, 544 U. S. 167, 174 (2005); internal
quotation marks omitted). In *Bostock*, the Court likewise
observed that "discriminate" typically means simply "'[t]o
make a difference in treatment or favor (of one as compared
with others).'" 590 U. S., at 657 (quoting Webster's New
International Dictionary 745 (2d ed. 1954)). Prohibited dis-
crimination occurs when an employer "intentionally treats
a person worse because of" a protected characteristic. 590
U. S., at 658. In elaborating on the meaning of "discrimi-
nate," *Bostock* made clear that a lack of "animosity" is "ir-
relevant" to a claim of discrimination under Title VII. *Id.*,
at 663; see also *Automotive Workers* v. *Johnson Controls,*

*Inc.*, 499 U. S. 187, 199 (1991) (explaining that a prohibition on discrimination "does not depend on why the employer discriminates" or the presence of "malevolent motive").

An animus-like "retaliatory intent" requirement is simply absent from the definition of the word "discriminate." When an employer treats someone worse—whether by firing them, demoting them, or imposing some other unfavorable change in the terms and conditions of employment—"because of" the employee's protected whistleblowing activity, the employer violates §1514A. It does not matter whether the employer was motivated by retaliatory animus or was motivated, for example, by the belief that the employee might be happier in a position that did not have SEC reporting requirements.

The Second Circuit was wrong when it held that the word "discriminate" in the statute's catchall provision imposes an additional requirement that the whistleblower plaintiff prove the employer's "retaliatory intent" or animus. Accepting that the word "discriminate" is relevant to the intent inquiry, the only intent that §1514A requires is the intent to take some adverse employment action against the whistleblowing employee "because of" his protected whistleblowing activity. The statute is clear that whether an employer "discriminated" in that sense has to be resolved through the contributing-factor burden-shifting framework that applies to Sarbanes-Oxley whistleblower claims.

B

Statutory context confirms that the word "discriminate" does not import a "retaliatory intent" requirement: Requiring a whistleblower to prove his employer's retaliatory animus would ignore the statute's mandatory burden-shifting framework. The burden-shifting framework was conspicuously absent from the Second Circuit's opinion, and UBS now insists that the statute's burden shifting addresses only "causation, not intent." Brief for Respondents 11. Not

so. Burden-shifting frameworks have long provided a mechanism for getting at intent in employment discrimination cases, and the contributing-factor burden-shifting framework is meant to be more lenient than most.

Consider the burden-shifting framework this Court has devised for certain Title VII claims. In *Watson* v. *Fort Worth Bank & Trust*, 487 U. S. 977 (1988), the Court explained that "[i]n order to facilitate the orderly consideration of relevant evidence," courts rely upon "a series of shifting evidentiary burdens that are 'intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.'" *Id.*, at 986 (quoting *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 255, n. 8 (1981)). This idea applies with equal force to the statutory framework here: Because discriminatory intent is difficult to prove, and because employers "contro[l] most of the cards," 135 Cong. Rec., at 5033, burden shifting plays the necessary role of "forcing the defendant to come forward with some response" to the employee's circumstantial evidence, *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 510–511 (1993). The result is that the trier of fact has the full picture before it and can make the ultimate determination as to whether the employer intentionally treated the employee differently, and worse, because of the employee's protected trait or activity.

The burden-shifting framework provides a means of getting at intent, and Congress here has decided that the plaintiff's burden on intent is simply to show that the protected activity was a "contributing factor in the unfavorable personnel action." 49 U. S. C. §42121(b)(2)(B)(i); see 18 U. S. C. §1514A(b)(2)(C) (explaining that an action brought in federal court "shall be governed by the legal burdens of proof set forth in section 42121(b)"). Once the employee makes that showing, the burden shifts to the employer to "demonstrat[e], by clear and convincing evidence, that the

Opinion of the Court

employer would have taken the same unfavorable person-
nel action in the absence of that behavior." 49 U. S. C.
§42121(b)(2)(B)(ii). While many statutes dealing with em-
ployment discrimination apply a higher bar, requiring the
plaintiff to show that his protected activity was a motivat-
ing or substantial factor in the adverse action, see, *e.g.*,
*EEOC* v. *Abercrombie & Fitch Stores, Inc.*, 575 U. S. 768,
772–773 (2015) (discussing burden in Title VII context), the
incorporation of the contributing-factor standard in
Sarbanes-Oxley reflects a judgment that "'personnel ac-
tions against employees should quite simply not be based
on protected [whistleblowing] activities'"—not even a little
bit. *Marano* v. *Department of Justice*, 2 F. 3d 1137, 1141
(CA Fed. 1993) (quoting S. Rep. No. 100–413, p. 16 (1988)
(discussing WPA); brackets omitted).

While the Second Circuit attempted to make "retaliatory
intent" a requirement for satisfaction of the "contributing
factor" element, 43 F. 4th, at 259–260, UBS does not ask
this Court to follow suit, and for good reason. The ordinary
meanings of the words "contribute" and "factor" suggest
that the phrase "contributing factor" is broad indeed. See
Webster's New World College Dictionary 317 (4th ed. 1999)
(defining "contribute," in the relevant sense, to mean "to
have a share in bringing about (a result); be partly respon-
sible for"); *id.*, at 508 (defining "factor" as "any of the cir-
cumstances, conditions, etc. that bring about a result").
Showing that an employer acted with retaliatory animus is
one way of proving that the protected activity was a con-
tributing factor in the adverse employment action, but it is
not the only way.

Here, the burden-shifting framework worked as it should
to "'sharpen the inquiry into the elusive factual question of
intentional discrimination.'" *Watson*, 487 U. S., at 986
(quoting *Burdine*, 450 U. S., at 255, n. 8). The jury heard
both sides of the story. It then determined that Murray had
shown that his protected activity was a contributing factor

Opinion of the Court

in his firing while UBS had not shown that it would have taken the same action in the absence of his protected activity. That burden shifting—and not some separate, heavier burden on the plaintiff to show "retaliatory intent"—is what the statute requires.[2]

### C

UBS and its *amici* argue that, without a retaliatory intent requirement, innocent employers will face liability for legitimate, nonretaliatory personnel decisions. See Brief for Respondents 33–34; Brief for Chamber of Commerce of the United States of America as *Amicus Curiae* 22–24. UBS posits a hypothetical where an employee's whistleblowing causes a client to end their relationship with the company, leaving the whistleblower without any work and ultimately leading to the elimination of the whistleblower's position. UBS asserts that "[u]nder petitioner's view, the employer would be liable for retaliation, despite the absence of any intent to retaliate." Brief for Respondents 34. The statute, properly understood, does not lead to that result.

The statute's burden-shifting framework provides that an employer will not be held liable where it "demonstrates, by clear and convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of" the protected behavior. 49 U. S. C. §42121(b)(2)(B)(ii). The right way to think about that kind of same-action causation

––––––––––

[2] UBS also asks this Court to affirm on an alternative basis. UBS claims that the Second Circuit held that the initial jury instruction on the contributing-factor element, which allowed the jury to find that Murray's protected activity was a contributing factor if it "'tended to affect in any way UBS's decision to terminate [his] employment,'" independently required the court to set aside the jury's verdict. Brief for Respondents 47. UBS is wrong to characterize the Second Circuit's footnoted discussion of this instruction as an alternative holding. See 43 F. 4th 254, 259, n. 4 (2022). On remand, the Second Circuit remains free to consider UBS's separate argument regarding this initial instruction, but this Court did not grant certiorari to address that issue.

Opinion of the Court

analysis is to "change one thing at a time and see if the outcome changes." *Bostock*, 590 U. S., at 656. The question is whether the employer would have "retain[ed] an otherwise identical employee" who had not engaged in the protected activity. *Id.*, at 660. As the Federal Circuit has explained in the WPA context, the same-action analysis "does not require . . . that the adverse personnel action be based on facts 'completely separate and distinct from protected whistleblowing disclosures.'" *Watson* v. *Department of Justice*, 64 F. 3d 1524, 1528 (1995). In that case, the correct inquiry was whether the employer would have taken the same action if it had learned of the contents of the employee's protected disclosure through other means. *Ibid.* In UBS's hypothetical, the relevant inquiry would be whether the employer still would have fired the employee if the client had left for some other reason. If so, it will have no trouble prevailing under the statute.

To be sure, the contributing-factor framework that Congress chose here is not as protective of employers as a motivating-factor framework. That is by design. Congress has employed the contributing-factor framework in contexts where the health, safety, or well-being of the public may well depend on whistleblowers feeling empowered to come forward. This Court cannot override that policy choice by giving employers more protection than the statute itself provides.

*       *       *

A whistleblower who invokes 18 U. S. C. §1514A bears the burden to prove that his protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint," 49 U. S. C. §42121(b)(2)(B)(i), but he is not required to make some further showing that his employer acted with "retaliatory intent." The judgment of the U. S. Court of Appeals for the Second Circuit is reversed for the reasons explained above, and the case is remanded for

Opinion of the Court

further proceedings consistent with this opinion.

*It is so ordered.*

Cite as: 601 U. S. ____ (2024) 1

ALITO, J., concurring

# SUPREME COURT OF THE UNITED STATES

———————

No. 22–660

———————

## TREVOR MURRAY, PETITIONER *v.* UBS SECURITIES, LLC, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[February 8, 2024]

JUSTICE ALITO, with whom JUSTICE BARRETT joins, concurring.

I agree with the Court that a plaintiff suing under the whistleblower-protection provision of the Sarbanes-Oxley Act need not prove that his or her employer acted with "animus," a term that denotes "prejudic[e]" or "ill will."* Merriam-Webster's Collegiate Dictionary 46 (10th ed. 1996); American Heritage Dictionary 73 (3d ed. 1992). The statute makes no mention of "animus" or any of its synonyms, and we have no ground for adding it in as an additional, nonstatutory requirement. I write separately to explain in simple terms how the statute works and to reiterate that our rejection of an "animus" requirement does not read intent out of the statute. Rather, as the Court confirms, a plaintiff must still show intent to discriminate. *Ante,* at 9.

A Sarbanes-Oxley plaintiff must ultimately prove that his or her employer "discharge[d], demote[d], suspend[ed], threaten[ed], harass[ed], or in any other manner discriminate[d] against" him or her "because of" protected whistleblowing. 18 U. S. C. §1514A(a). The phrase "in any other manner discriminate" suggests that the adverse action—

———————

*The Court uses the term "retaliatory intent" as a synonym for "animus." See *ante,* at 8. All references in the opinion to "retaliatory intent" must be understood to carry that meaning.

here, petitioner's discharge—must be a form of discrimination.  Cf. *Massachusetts* v. *EPA,* 549 U. S. 497, 557 (2007) (Scalia, J., dissenting) (noting that when a catchall phrase is "limited," the other items in the list "must be viewed . . . in light of that category").  And a discriminatory discharge that is made "because of" a particular factor necessarily involves an intentional choice in which that factor plays some role in the employer's thinking.  As the Court puts it, the plaintiff must prove that the employer "'intentionally treat[ed the plaintiff] worse because of'" the protected conduct.  *Ante,* at 9 (quoting *Bostock* v. *Clayton County,* 590 U. S. 644, 658 (2020)).

To structure the presentation of proof in a case brought under the whistleblower-protection provision, Sarbanes-Oxley adopts a burden-shifting framework.  See 18 U. S. C. §1514A(b)(2)(C); 49 U. S. C. §42121(b)(2)(B).  This framework provides the "mechanism for getting at" discriminatory intent.  *Ante,* at 11.  Under this framework, the plaintiff must show that differential treatment was at least in part "because of" his or her protected conduct, §1514A(a), and was thus a "contributing factor" in the employer's decision-making process.  §42121(b)(2)(B)(iii).  This requires proof of intent; that is, the plaintiff must show that *a* reason for the adverse decision was the employee's protected conduct.  The plaintiff need not prove that the protected conduct was the only reason or even that it was a principal reason for the adverse decision.  Showing that it "help[ed] to cause or bring about" that decision is enough.  Concise Oxford Dictionary 310 (10th ed. 1999); Webster's Third New International Dictionary 496 (1993) (defining "contributing" as "ha[ving] a part in producing an effect").

If the plaintiff makes that showing, the statute's intent requirement is met, and the only open question is causation.  On that element, the burden shifts to the employer to prove "by clear and convincing evidence that [it] would have taken the same unfavorable personnel action" alleged in the

ALITO, J., concurring

complaint. §42121(b)(2)(B)(iv). In other words, it must show that the plaintiff's protected conduct did not cause the challenged employment decision. And if the employer satisfies that burden, the element of causation has not been proved.

On the understanding that this is the interpretation adopted today, I join the opinion of the Court.