# 20-4202, 21-56

## United States Court of Appeals for the Second Circuit

---

TREVOR MURRAY,

    *Plaintiff-Appellee-Cross-Appellant*,

v.

UBS SECURITIES, LLC, UBS AG,

    *Defendants-Appellants-Cross-Appellees*.

---

On Appeal from the United States District Court
for the Southern District of New York
No. 14-cv-927, Judge Katherine Polk Failla

---

**SUPPLEMENTAL REPLY BRIEF FOR
DEFENDANTS-APPELLANTS-CROSS-APPELLEES
UBS SECURITIES LLC AND UBS AG**

---

| | |
|---|---|
| Gabrielle Levin | Thomas G. Hungar |
| GIBSON, DUNN & CRUTCHER LLP | Eugene Scalia |
| 200 Park Avenue | Andrew G.I. Kilberg |
| New York, NY 10166 | GIBSON, DUNN & CRUTCHER LLP |
| (212) 351-4000 | 1050 Connecticut Avenue, N.W. |
| | Washington, DC 20036 |
| | (202) 955-8500 |

*Counsel for UBS Securities LLC and UBS AG*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................3

I.     The Court Has Already Determined The Instruction Was Flawed. .................3

II.    Reconsideration Would Lead To The Same Result. ......................................4

    A.     UBS Properly Preserved Its Objections. ................................................4

    B.     The Instruction Was Erroneous. ...........................................................6

III.   The Error Was Not Harmless. ..................................................................10

CONCLUSION ............................................................................................................12

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Ashley v. City of New York*,
    992 F.3d 128 (2d Cir. 2021) ................................................................4

*Conroy v. Aniskoff*,
    507 U.S. 511 (1993) ............................................................................7

*Dupree v. Younger*,
    598 U.S. 729 (2023) ............................................................................5

*Frost v. BNSF Ry. Co.*,
    914 F.3d 1189 (9th Cir. 2019) ............................................................8

*Girden v. Sandals Int'l*,
    262 F.3d 195 (2d Cir. 2001) ................................................................4

*Gordon v. N.Y.C. Bd. of Educ.*,
    232 F.3d 111 (2d Cir. 2000) ..........................................................8, 10

*Gunderson v. BNSF Ry. Co.*,
    850 F.3d 962 (8th Cir. 2017) ..............................................................8

*Kuduk v. BNSF Ry. Co.*,
    768 F.3d 786 (8th Cir. 2014) ..............................................................8

*Mei Xing Yu v. Hasaki Rest., Inc.*,
    944 F.3d 395 (2d Cir. 2019) ................................................................7

*Murray v. UBS Sec., LLC*,
    43 F.4th 254 (2d Cir. 2022) ..............................1, 2, 3, 6, 10, 11, 12

*Murray v. UBS Sec., LLC*,
    601 U.S. 23 (2024) ..............................................1, 3, 6, 7, 9, 10, 12

*Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*,
    462 U.S. 810 (1983) ............................................................................7

*Rookaird v. BNSF Ry. Co.*,
    908 F.3d 451 (9th Cir. 2018) ..............................................................8

Page(s)

*United States v. Christmann*,
    298 F.2d 651 (2d Cir. 1962) ...................................................................8

*United States v. White*,
    552 F.3d 240 (2d Cir. 2009) ...................................................................6

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ..............................................................................10

**Statutes**

18 U.S.C. § 1514A ........................................................................................1

49 U.S.C. § 42121(b)(2)(B)(iv) ..............................................................9, 12

**Other Authorities**

135 Cong. Rec. 5033 (1989) .........................................................................7

"Tend," *Black's Law Dictionary* (11th ed. 2019) ........................................9

"Tend," Webster's Collegiate Dictionary (10th ed. 1993) ...........................9

**Regulations**

*Procedures for the Handling of Retaliation Complaints Under the National
    Transit Systems Security Act and the Federal Railroad Safety Act*,
    75 Fed. Reg. 53522 (Aug. 31, 2010) .....................................................8

## PRELIMINARY STATEMENT

Before the Supreme Court, Plaintiff agreed that a "contributing factor" is something that "'bring[s] about,'" "'contribute[s]' to," is "'partly responsible' for," or "'has some share or agency in producing [a] result.'" Corrected Br. for Pet'r at 22-23, No. 22-660 (U.S. July 11, 2023) (citation omitted). Yet he now advocates a contributing-factor standard that requires no contribution whatsoever—a reversal from his position before the Supreme Court that he utterly fails to address in his supplemental brief.

The first sentence of his brief, in fact, misstates the causation standard for SOX whistleblower-retaliation claims. 18 U.S.C. § 1514A. Nowhere does the statute define "contributing factor" as one that "tend[ed] to affect in any way" the adverse action. That is the definition the district court gave in its jury instruction, but this Court concluded it was "inadequa[te]," because it allowed the jury to find liability even if the alleged protected activity "*insulated*" Plaintiff from a termination or was merely "*the sort of behavior* that would *tend to affect*" the adverse decision. *Murray v. UBS Sec., LLC*, 43 F.4th 254, 259 n.4 (2d Cir. 2022). What's more, the district court's definition is irreconcilable with the Supreme Court's conclusion that a "contributing factor" is something that has "a share in bringing about"—is "partly responsible for"—the adverse action. *Murray v. UBS Sec., LLC*, 601 U.S. 23, 37 (2024).

1

Plaintiff offers no persuasive reason to depart from this Court's prior conclusion. He insists that this Court somehow "sustain[ed]" the district court's decision and "rejected" UBS's arguments, and that the Supreme Court "effectively" "endorse[d]" that result, Pl.Supp.Br. at 1, 3-4, 12, but his claims are conclusively refuted by this Court's prior criticisms of the instruction and the Supreme Court's express recognition that those issues remain for this Court to address on remand. And Plaintiff's suggestion that UBS failed to preserve its objection to the instruction is belied by the clear record that the district court well understood and rejected UBS's repeated objections.

Finally, the instructional error was not harmless. An "erroneous instruction requires a new trial unless . . . the court is *convinced* that the error did not influence the jury's verdict." *Murray*, 43 F.4th at 262 (emphasis added). Plaintiff studiously ignores that legal standard. This was "one of the closest" cases the district court "ha[d] ever observed." SA-55. The jury heard evidence that supported this Court's prior conclusion that Plaintiff's alleged protected activity "tended to affect" his termination "in any way" because it could have insulated him from termination, delayed that outcome, or made his discharge less likely. *See* UBS.Supp.Br. at 20-24. That is more than enough to show that the error was not harmless.

## ARGUMENT

### I. The Court Has Already Determined The Instruction Was Flawed.

Plaintiff's description of this Court's prior treatment of the contributing-factor instruction is pure invention. Plaintiff claims that this Court "rejected UBS's" arguments and "sustain[ed]" the jury's findings. Pl.Supp.Br. at 1, 3-4. That is wrong. The Court described the instruction as "inadequa[te]," concluding that it wrongly invited liability for actions that "*insulated*" Plaintiff from a termination or were only the "*sort of behavior* that would *tend to affect* a termination decision." *Murray*, 43 F.4th at 259 & n.4.

Nor did the Supreme Court "effectively" endorse the instruction. Pl.Supp.Br. at 12. Rather, it expressly confirmed that this Court is "free" to rule for UBS on remand on this "separate" issue. *Murray*, 601 U.S. at 37 n.2. The Supreme Court's statement that the "burden-shifting framework worked as it should" referred to the sole issue on which it granted certiorari: whether SOX requires retaliatory intent. *Id.* at 37 & n.2. As UBS has explained, the Supreme Court's opinion actually *confirms* UBS's position that a "contributing factor" must actually have a "share in bringing about"—be "partly responsible for"—an adverse employment action. *Id.* at 37; UBS.Supp.Br. at 12-13. Stated differently, protected activity must be "*a* reason for the adverse decision." *Murray*, 601 U.S. at 41 (Alito, J., concurring). As this Court previously concluded, the district court's instruction was error precisely because it

3

failed to require Plaintiff to prove that his alleged protected activity had *any* share in bringing about his termination.

## II. Reconsideration Would Lead To The Same Result.

A fresh look only confirms the Court's prior conclusions. *See* UBS.Supp.Br. at 13-20.

### A. UBS Properly Preserved Its Objections.

UBS clearly and repeatedly objected to the district court's contributing-factor instruction. UBS.Supp.Br. at 13-16. The district court "underst[ood]" those objections and overruled them, JA-1240:24-25, which is all that is required for preservation, *see Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021). A party need not keep objecting "where, as here, a party makes its position clear—[defendant] twice argued [its] point to the district court, which rejected it—and the trial judge is not persuaded." *Girden v. Sandals Int'l*, 262 F.3d 195, 202 (2d Cir. 2001).

Plaintiff points to a subsequent colloquy with the district court concerning a question from the jury seeking guidance about the contributing-factor instruction. But by that point, UBS's objections to the contributing-factor instruction were well established: UBS raised them at the charge conference (JA-1240:9-20; JA-1246:3-6), in a letter noting UBS's "continuing objection" (JA-3030), and at the very conference that Plaintiff now selectively quotes, during which counsel "felt the need

4

to put it on the record" that UBS remained concerned (JA-1416:4-5). *See* UBS.Supp.Br. at 13-16. UBS did not need to lodge repeated objections to legal issues the district court had already decided. *See Dupree v. Younger*, 598 U.S. 729, 736-37 (2023).

In any event, UBS plainly did not agree to the answer that the court *actually* gave. The court first indicated that, originally, it "was going to commend" the jury back to the "charge, but I don't know that that is responsive." JA-1414:24-25. The court then proposed to instruct the jury to assess whether "anyone with knowledge of the protected activity, because of the protected activity, affect[ed] the decision to terminate Mr. Murray's employment." JA-1415:4-8. Perhaps UBS might have been more "comfortable" (JA-1416:10-12) if the court had responded to the jury with that answer—one that neither referred back to the original charge nor used "tended to affect in any way."

But that is not the answer the district court ultimately gave. Instead, it chose to "refer" the jury back to the *original* "charge," where the "tended to affect in any way" definition remained. JA-1418:9-18; JA-3053-3054; *see* UBS.Supp.Br. at 19. The court's answer also instructed the jury to "consider" whether a relevant person at UBS "affect[ed] *in any way*" the termination decision—in substance repeating language to which UBS had already objected. JA-1418:9-18 (emphasis added). Rather than "clarifying" the initial instruction (Pl.Supp.Br. at 2, 20-22), the district

5

court effectively doubled down on the errors UBS had previously identified and objected to.

Plaintiff relies on *United States v. White*, 552 F.3d 240 (2d Cir. 2009), but that pre-*Dupree* case is inapposite. In *White*, the *defendant* himself "requested and received a specific curative instruction immediately following the district court's supplemental charge and, after the district court's recitation of that curative instruction, did not press any further objection." *Id.* at 249. Here, UBS did not request the supplemental instruction, that instruction reiterated the objectionable content, and UBS noted its concern. In light of UBS's repeated objections, Plaintiff's suggestion that UBS suddenly decided to reverse course in light of the jury's question is absurd—especially because the question *validated* UBS's fears of jury confusion.

### B. The Instruction Was Erroneous.

A fresh look would confirm this Court's prior conclusion that the district court's "*tended* to affect in *any* way" definition of "contributing factor" was erroneous. *Murray*, 43 F.4th at 259 n.4 (emphases added). The instruction did not require any link between cause and effect, inviting liability when the employee's protected activity is not even "partly responsible for" his termination. *Murray*, 601 U.S. at 37 (citation omitted); *see* UBS.Supp.Br. at 16-17.

6

Plaintiff insists that "Congress" directed that result. Pl.Supp.Br. at 1, 12, 14. Twice, he fabricates quotations without citation, falsely implying that Congress included the phrase "tends to affect in any way" in the statute. *Id*. at 1, 14. Elsewhere, he finds this test in an "Explanatory Statement" about a different statute, the Whistleblower Protection Act of 1989, which has different structure and provisions. *Id*. at 12 (citing 135 Cong. Rec. 5033 (1989)); *see also* Br. for Respondents at 40-42, No. 22-660 (U.S. Aug. 8, 2023). This does not even deserve the label legislative history. It was offered by a single representative with the "approval and concurrence" of two others, 135 Cong. Rec. at 5033, and thus lacks "the status of a conference report, or even a report of a single House," *Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*, 462 U.S. 810, 832 n.28 (1983). That's "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in the judgment). In any event, by "look[ing] at the text," *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 408 (2d Cir. 2019), the Supreme Court has already instructed that "contributing factor" means something that is "partly responsible for" the result, *Murray*, 601 U.S. at 37.

Plaintiff's claim that "[t]en Circuits" that have adopted a causation-free reading of SOX is no better. Pl.Supp.Br. at 13. Only one of those cases even addresses jury instructions. It accepted that "tends to affect" terminology based on

7

a daisy-chain of case citations that ultimately led to an OSHA rule governing internal procedures for Federal Railroad Safety Act complaints. *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1195 (9th Cir. 2019) (citing *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 461 (9th Cir. 2018), citing *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017), citing *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014), citing 75 Fed. Reg. 53522, 53524 (Aug. 31, 2010)). And in *all* of those cases, the courts were clear that plaintiffs always must show their protected activity was *a cause* of the adverse action in some sense. *See, e.g.*, *id.* at 1197 (requiring "that an impermissible factor or consideration contributed to the decision to discipline," even if it "played only a very small role").

This Court should not adopt a misleading and inapposite formulation merely because other courts have repeated it without analysis. Instructions must describe the law in a manner "readily understood by laymen." *United States v. Christmann*, 298 F.2d 651, 653 (2d Cir. 1962). And this Court has specifically cautioned that "trial judges should not import[ ] uncritically" the language "developed by appellate courts for use by judges" to assess a burden-shifting scheme, which "is at best irrelevant, and at worst misleading to a jury." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) (quotation marks omitted).

Plaintiff's Supplemental Brief demonstrates the acute risk of confusion. Plaintiff at times appears to agree that a "contributing factor" is something that the

8

adverse action is "'based on,'" Pl.Supp.Br. at 13 (quoting *Murray*, 601 U.S. at 37), which is how he briefed the issue before the Supreme Court, *see* UBS.Supp.Br. at 18. He also offers cherry-picked dictionary definitions of "tend" to seemingly suggest that the jury knew it was required to find that Plaintiff's alleged protected activity "'move[d]'" or "'direct[ed]'" UBS toward the termination decision. Pl.Supp.Br. at 13 (citation omitted). But the common-sense understanding of "tend" is "to exhibit an inclination or tendency," Webster's Collegiate Dictionary 1214 (10th ed. 1993), and to be "disposed toward (something)," *Black's Law Dictionary* (11th ed. 2019). That is what this Court has already indicated is insufficient.

Nevertheless, Plaintiff insists that, because the employer can escape liability at the second step of the burden-shifting framework, the plaintiff need not prove that the protected activity had an "actual" causal role. Pl.Supp.Br. at 16. Not so. The employer's burden at the second step is to disprove *but-for* causation—i.e., to show that the employer would have taken the same action "in the absence of" the protected activity—by *clear and convincing evidence*. 49 U.S.C. § 42121(b)(2)(B)(iv). The employer's opportunity to disprove a closer causal nexus under a higher standard of proof does not mean that the plaintiff does not have to prove any causal nexus at the first step.

Nor is it true that requiring a plaintiff to prove that the protected activity was "partly responsible for" an adverse employment action, *Murray* 601 U.S. at 37,

9

transforms the "contributing factor" requirement into a "motivating factor" standard, Pl.Supp.Br. at 15. A "motivating factor" is something that was a "'substantial' factor in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013). A SOX plaintiff, by contrast, need only show—by circumstantial evidence—"that *a* reason for the adverse decision was the employee's protected conduct." *Murray*, 601 U.S. at 41 (Alito, J., concurring).

Moreover, Plaintiff ignores that the instruction merely required that the jury find that the alleged protected activity had "any" effect on the termination decision. As this Court explained previously, that word would permit liability where the protected activity "*insulated*" Plaintiff "from a termination." *Murray*, 43 F.4th at 259 n.4. The instruction was error any way it's sliced.

### III. The Error Was Not Harmless.

"'An erroneous instruction requires a new trial unless the error is harmless,'" and "[a]n error is harmless only if the court is convinced that the error did not influence the jury's verdict." *Gordon*, 232 F.3d at 116 (citation omitted); *see also Murray*, 43 F.4th at 262. Plaintiff ignores that standard. Understandably so, as it is a high bar that he does not get close to clearing.

As this Court previously concluded, the jury may have believed that "by virtue of his whistleblowing activity," Plaintiff was "*insulated*" from a termination for a period, and if he had not engaged in whistleblowing, he would have been terminated

10

"sooner." *Murray*, 43 F.4th at 259 n.4. For instance, the former Global Head of Human Resources for UBS's FICC division testified that UBS would "probably hold off on a termination of the employment until the investigation had been completed" if an employee complained about allegedly unlawful conduct. JA-612:22-613:7.

The jury also could have adopted Plaintiff's characterization of the evidence and concluded that Schumacher attempted to move Plaintiff to "a desk analyst" role because of his protected activity since that role was "unregulated by the SEC." *Murray*, 43 F.4th at 257. Plaintiff attempts to downplay this evidence, but he cannot escape the fact that Schumacher's straightforward recommendation is memorialized in a contemporaneous email in which he *first* proposes "mov[ing] [Plaintiff] onto" the CMBS "desk"—and only *if* that cannot be done—"mak[ing] the tough call" to terminate Plaintiff's employment. JA-1544. The jury thus could have concluded that Schumacher's conduct "tended" to affect the later termination decision in some "way"—even if his conduct did not actually have "a share in bringing about" the termination, for example, because it made his termination, on balance, *less* likely as Hatheway considered whether there was another job for Plaintiff elsewhere in UBS or delayed the termination by offering Plaintiff a new role.

Plaintiff also insists that the instructional error was harmless because the jury found that UBS failed to carry its burden at the second step of the burden-shifting framework. Pl.Supp.Br. at 23-24. That conclusion does not follow, because the

11

burdens of proof for the parties are substantially different. The jury found that UBS failed to prove by *clear and convincing evidence* that it would have discharged Plaintiff absent protected activity. 49 U.S.C. § 42121(b)(2)(B)(iv). That UBS did not satisfy that extraordinarily high standard does not mean the jury necessarily believed by *the preponderance of the evidence* that Plaintiff's protected activity had "a share in bringing" about his termination. *Murray*, 601 U.S. at 37.[*]

This was "one of the closest" cases the district court "ha[d] ever observed." SA-55; *see also Murray*, 43 F.4th at 262. The error in the contributing-factor instruction—defining a critical element of Plaintiff's claim—was not harmless.

## CONCLUSION

The Court should vacate the judgment below and remand for a new trial.

---

[*] Plaintiff claims that counsel for UBS "effectively acknowledged" during oral argument that the instruction was harmless. Pl.Supp.Br. at 24-25. Quite the opposite. UBS's counsel specifically pointed to the inadequacy of the contributing-factor instruction, noting that Plaintiff was "just" required to "show[] that the protected activity tended to affect in any way." Tr. of Oral Arg. at 83:24-84:2, No. 22-660 (U.S. Oct. 10, 2023).

| | |
|---|---|
| Dated: May 2, 2024 | Respectfully submitted, |
| | */s/ Thomas G. Hungar* |
| Gabrielle Levin | Thomas G. Hungar |
| GIBSON, DUNN & CRUTCHER LLP | Eugene Scalia |
| 200 Park Avenue | Andrew G.I. Kilberg |
| New York, NY 10166 | GIBSON, DUNN & CRUTCHER LLP |
| (212) 351-4000 | 1050 Connecticut Avenue, N.W. |
| | Washington, DC 20036 |
| | (202) 955-8500 |

*Counsel for UBS Securities LLC and UBS AG*

# CERTIFICATE OF COMPLIANCE

I certify that:

1. This supplemental reply brief complies with the type-volume limitation set by this Court's March 14, 2024, order because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,753 words, as determined by the word-count function of Microsoft Word.

2. This supplemental reply brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point, Times New Roman font.

Dated: May 2, 2024 /s/ *Thomas G. Hungar*
Thomas G. Hungar